On the Merits.
LAND, J.
Plaintiff sued W. O. and O. G. Burton for a balance of $2,065.32, due under a contract for the sale and delivery of lumber to be used in the construction of a warehouse on land belonging to the codefendant Albert Mackie, who held the title to the property for the Albert Mackie Grocery Company, Limited. Albert Mackie was sued on the ground that he as owner had failed to require of his said contractors a bond in favor of the furnisher of materials as required by law. The said’ company intervened and called the Fidelity & Deposit Company of Maryland in warranty.
W. O. and C. G. Burton filed an answer, in which they specially denied the delivery of the last three car loads of lumber charged in the account, and averred that plaintiff failed to complete the delivery of the lumber by February 15, 1905, pursuant to contract, and claimed in reconvention the sum of $4,603.32 damages by reason of the delay in the delivery of the material.
The respondents further averred that during the months of April and May, 1905, they repeatedly put plaintiff in default, “and notified it that they would hold it liable for all damages suffered by reason of the delay in delivery of the materials, the extra cost of handling same, and damages and expenses to which respondents were put.” The respondents further averred that, instead of reimbursing them the amount of their losses as demanded, the plaintiff put a lien upon the building, and compelled respondents to go to the further expense of $50 for securing a bond to get payment on the contract.
The principal items of alleged damage are-based on the delay of the plaintiff in the delivery of girders and joists. It is alleged in the answer that the defendant contractors-proceeded to erect the building without such girders using temporary substitutes which had to be removed and replaced with proper material. The respondents also claim as damages for delay the salaries of all their employés and superintendent for two months, aggregating $2,250, and other items that need not be recapitulated.
On the trial below the correctness of the account sued on was proven beyond question, and there was judgment in favor of the plaintiff as prayed for against W. O. and C. G. Burton with recognition of their lien on the building. Plaintiff’s demand against the owners and the reeonventional demand of W. O. and O. G. Burton were dismissed.
All the defendants have appealed, and plaintiff has answered the appeals of the owners, praying for a personal judgment against them.
On December 17, 1904, plaintiff offered to sell and deliver to W. O. and O. G. Burton a bill of long leaf pine lumber at an average price of $16.72 per M feet, shipment to-commence about January 1st, and to be completed about February 15, 1905. This offer was accepted by W. O. and C. G. Burton. Shipments commenced on January 10, and terminated on May 31, 1905. The payments on account extended from March 8 to May 26, 1905.
*125 On March 23, 1905, W. O. and C. G. Burton wrote the plaintiff that the delivery of the lumber was past due, and that the building was being delayed on account of the same, and that under the circumstances they would be obliged to hold the plaintiff responsible for this delay.
On March 27th, the defendants, again complained of the delay, and wrote that they were using roof timbers for temporary joists, necessitating the expense of rebuilding and placing and recorking the joists in holes left in the wall in order to carry on the brickwork. The letter concludes:
“We notify you that you are held for liquidated damages.”
The defendants continued to complain of delay and to urge the delivery of the lumber as per contract.
On April 5, 1905, they wrote:
“We would be more than glad to pay you if your lumber was delivered, but we decline to make further payments until we receive more lumber.”
On April 15, 1905, the defendants wrote:
“This is to notify you that, if the balance of said lumber is not delivered in ten (10) days, we propose to go into the open market and purchase same and charge said lumber to your account.”
On April 19, 1910, the defendants wrote that they could not accept certain lumber on account of the delay in shipment, as they had been obliged to purchase the material elsewhere. It appears that the architect condemned all the flooring delivered, but that this matter was satisfactorily adjusted between the parties.
There was -unquestionably delay in the delivery 'of some of the lumber, and damages may be recovered by the vendee from the vendor for delay in the delivery of the things sold according to the circumstances of the case. 3 Sutherlánd on Damages (3d Ed.) § G64. But it is the duty of the purchaser to obtain a substitute for the article sold whenever it is practicable to do so. Id.
“Where there was delay in delivering logs to-a sawmill, the operations of which were thereby interrupted, these rules were announced: It was the vendee’s duty to obtain logs elsewhere-as expeditiously and cheaply as he reasonably could, if that was practicable. The vendor-would be responsible for the excess of the costs-of the logs so obtained over the price at which he contracted to furnish them, and also for-such reasonable expenses as were incurred in-so doing.” Id.
In George W. Cable et al. v. Leeds & Co., 6 La. Ann. 293, the defendants were sued for damages for failing to supply a suitable-crank for a steamboat, and the court held that no damages could be recovered except those caused by the detention of the boat at the time that it was actually necessary to-have obtained a new crank.
If, as averred in the answer, the limit for delivery expired on February 15, 1905, the contractors should have proceeded forthwith to obtain the material elsewhere, if they desired to put themselves in a position to claim damages for delay.
Girders and joists were furnished by the-plaintiff, but -one-half or more were rejected by the architect on account of quality. The defendant contractors made no effort to-procure such lumber elsewhere, but rushed the construction of the building, using temporary substitutes for girders and joists, which later had to“ be removed for the insertion of proper lumber furnished by the plaintiff.
The architect testified that this was a. very irregular method of construction. Surely the additional cost of such extraordinary construction was not a direct consequence of' plaintiff’s failure to deliver proper lumber, nor can be said to have been within the reasonable contemplation of the parties at the time of the contract.
The bond furnished by the contractors was in favor of the owner alone, and for their-failure to secure the furnisher of materials, the defendant owners are personally respem *127 sible under the express provisions of the statute. Act No. 180 of 1894.
It is therefore ordered that the judgment below be amended by inserting after the words “W. O. & O. G. Burton” in the third line of the decree the words, “Albert Mackie and the Albert Mackie Grocery Company, Limited, in solido”; and it is further ordered that, as thus amended, said judgment be and is hereby affirmed, and that the defendants pay the costs of appeal.